IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **VOIP-PAL.COM, INC.** <br> *Plaintiff,* <br><br> v. <br><br> **GOOGLE LLC** <br> *Defendant.* | § <br> § <br> §    Civil No. 6:20-cv-00269-ADA <br> § <br> § <br> §    REDACTED VERSION <br> § <br> § |

# ▮ ORDER GRANTING MOTION TO TRANSFER VENUE

Defendant Google LLC ("Google") filed its Motion to Transfer (the "Motion") on December 14, 2021 with leave of the Court. ECF No. 62. Plaintiff VoIP-Pal.com, Inc. ("VoIP") filed its corrected Opposition to Google's Motion on April 29, 2022. ECF No. 83. Google filed its Reply on May 6, 2022. ECF No. 85. Additionally, VoIP filed a Motion for Leave to Submit Supplemental Briefing (the "Motion for Leave") on June 1, 2022, ECF No. 97, to which Google filed its response on June 3, 2022, ECF No. 98. After careful consideration of the facts and briefings, the Court **GRANTS** Google's Motion.

## I.   FACTUAL BACKGROUND

Plaintiff VoIP is a Nevada corporation with its principal place of business in Waco, Texas. ECF No. 1 ¶ 1. Defendant Google is a Delaware corporation with its principal place of business in Mountain View, California. ECF No. 17 ¶ 2. VoIP filed a complaint against Google alleging infringement of U.S. Patent No. 10,218,606 (the "'606 patent", or the "Asserted Patent") on April 3, 2020. ECF No. 1 ¶ 9. The Asserted Patent describes systems, methods, and apparatuses for communication across and between internet-protocol based communication systems and other networks, such as internally controlled systems and external networks. *Id.* ¶¶ 26, 40. VoIP accuses

Google's services Google Hangouts, Google Duo, and Google Home, and Google's Google Home line of devices of infringing the Asserted Patent. *Id* ¶ 44.

Specifically, VoIP alleges that Google Hangouts and Google Duo are online messaging and communication services that include applications that operate in conjunction with a collection of servers and gateways connected over a wide area network, and these applications can initiate a communication between a first participant and a second participant. *Id.* ¶ 42. VoIP alleges that the participating devices with the Google Hangouts and/or Google Duo applications are associated with one or more network elements, such as clusters and/or nodes, and the second participant may be associated with either the same or different clusters and/or nodes. *Id.* According to VoIP, the use of first participant attributes, including a first participant contact list and information stored on Google servers, is used at least for processing a second participant identifier and/or for determining first participant account status. *Id.*

VoIP additionally alleges that Google Home is a communication service that connects users of smart speaker devices with other users of smart speaker devices and with mobile devices. *Id.* ¶ 43. This includes home automation and smart speaker devices including devices branded as Google Home and Google Nest that operate in conjunction with a collection of servers and gateways connected over a wide area network. *Id.* VoIP alleges that the Google Home devices are associated with one or more network elements, such as clusters and/or nodes, and the second participant may be associated with either the same or different clusters and/or nodes. *Id.* According to VoIP, the use of first participant attributes, including a first participant contact list and information stored on Google servers, is used at least for processing a second participant identifier and/or for determining first participant account status. *Id.*

While VoIP's principal place of business is here in Waco, only Chief Financial Officer Kevin Williams works in Waco. ECF No. 76-1 ¶¶ 18–19. Moreover, until recently VoIP's principal place of business was in Bellevue, Washington—VoIP moved to Waco in March of 2021, less than one year before it filed this lawsuit. ECF No. 85 at 5.

## II.   LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). Answering that question requires a determination of whether the proposed transferee venue is proper. A plaintiff may establish proper venue by showing that the defendant committed acts of infringement in the district and has a regular and established place of business there. 28 U.S.C. § 1400(b). A defendant has a regular and established place of business in the district if the plaintiff proves that there is a "physical place in the district," that it is a "regular and established place of business," and lastly that it is "the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Additionally, Fifth Circuit courts "should . . . grant" a § 1404(a) motion if the movant can show his proposed forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. The Fifth Circuit further held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (hereinafter "*Volkswagen I*") (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. Thus, the movant must demonstrate that the alternative venue clearly more convenient than the plaintiff's chosen forum. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–315. While "clearly more convenient" is not necessarily equivalent to the "clear and convincing" evidence standard, the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or

practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.   ANALYSIS

**A. VoIP and Google's supplemental briefings are considered in this analysis.**

VoIP filed its Motion for Leave, seeking the opportunity to submit a supplemental brief addressing "recently disclosed information" that VoIP claims "contradicts certain representations made" in Google's motion to transfer. ECF No. 97 at 1. VoIP points to Google's initial Rule 26 disclosures which identified documents as being available from its counsel's office in Chicago and claims this fact weighs against transfer because this demonstrates that these documents were collected outside of the NDCA. ECF No. 97-1 at 2–3; ECF No. 97-3 at 16. While Google does not oppose VoIP's Motion for Leave, it clarified that its amended disclosures corrected the identified location of these documents from Chicago to Palo Alto, noting that the original disclosed location was "a vestige from the disclosures [Google's counsel] used as a starting template." *Compare* ECF No. 97-3 at 16, *with* ECF No. 97-4 at 16; ECF No. 98-2 at 6–7. Google additionally argues that both its original disclosures and amended disclosures specifically mention that these documents may be additionally located "at other locations to be identified as needed," and that the documents are nonetheless still available where they are produced, including the NDCA. ECF No. 98 at 1–2; ECF No. 97-3 at 16; ECF No. 97-4 at 16.

The Court **GRANTS** VoIP's motion and considers the contents of VoIP's supplemental brief as attached as Exhibit A to its motion, ECF No. 97-1, for purposes of weighing the relative ease of access to sources of proof in each District, *infra* Section III(C)(a). Additionally, the Court considers Google's response, ECF No. 98, as its opposition to VoIP's supplemental brief.

**B. VoIP could have brought this suit in the Northern District of California.**

The preliminary question in any transfer analysis under 28 U.S.C. § 1404(a) is whether the plaintiff could have properly brought its lawsuit in the proposed transferee forum. *Volkswagen II*, 545 F. 3d at 312. VoIP certainly could have. Under 28 U.S.C. § 1400(b), one location where venue in a patent lawsuit is proper is where the defendant has committed acts of infringement and maintains a regular and established place of business. Google's principal place of business is in the Northern District of California, and Google has sold the Accused Products within the district as well. VoIP does not dispute that this threshold inquiry is satisfied.

**C. The private interest factors favor transfer.**

   **a. The cost of attendance for willing witnesses favors transfer.**

The most important factor in the transfer analysis is witness convenience. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). This factor appropriately considers the cost of attendance of all willing witnesses, including both party and non-party witnesses. *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *2–3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But the Federal Circuit has clarified that courts

should not "rigidly" apply the 100-mile rule in cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (discussing witnesses traveling from New York).

Rather, "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home.

Google's declarant, Andrew Rope, states that "based on [his] investigation" of a scope not described in the declaration, witnesses relevant to Google Home are based at Google's Mountain View, California campus. ECF No. 62-7 ¶ 9. Specifically, Rope points out software engineers ▇ and ▇. *Id.* Regarding Hangouts, Google points to engineers ▇ and ▇ as relevant employees based in Mountain View. *Id.* ¶ 7. Other software engineers with knowledge about Google Home, Hangouts, and Duo are based in Kirkland, Washington, and Stockholm, Sweden. *Id* ¶¶ 7, 9, 11. Mr. Rope "[is] aware" of no employee in the Western District of Texas with relevant knowledge on Google Home, Hangouts, or Duo. *Id.*

VoIP's brief regarding this factor focuses mainly on deficiencies in Google's arguments rather than providing affirmative evidence that weighs against transfer. ECF No. 83 at 8–11. VoIP points out that Google's declarant is not a technical employee but a "Senior Legal Project Manager," that Mr. Rope's declaration fails to address certain aspects of the accused technologies,

and that Mr. Rope apparently relied on no documents to prepare his declaration. *Id.* VoIP asks this Court not to "reward[] Google for being less than forthcoming" throughout the venue discovery process. *Id.* at 11. Finally, VoIP identifies its own witnesses and inventors, but VoIP confusingly argues that the convenience of its own witnesses "is not a factor in the transfer analysis." *Id.* at 11. VoIP does not identify the foreign location of the inventors, so the Court cannot determine their convenience.

VoIP's concerns about Google's venue discovery practices are well-taken, and Mr. Rope's declaration certainly has its deficiencies. Mr. Rope's declaration fails to address whether he attempted to locate employees with knowledge about sales, marketing, or finance of the accused products. As VoIP points out, the only conclusion this Court can draw is that Mr. Rope failed to do so because Mr. Rope only identifies eight groups of engineers. ECF No. 62-7. Moreover, Mr. Rope's "carefully worded" declaration never concretely states that there are no relevant employees in the Western District of Texas—only that no relevant employees "are *known*" to be in this District. ECF No. 62-7 ¶ 5 (emphasis added). Mr. Rope's declaration does not indicate that he searched and reviewed any corporate records, such as human resources files, job descriptions, annual performance reviews, emails of relevant keywords, or the like. ECF No. 77-4 at 9–10. When asked to produce "all documents reviewed or relied upon" by Mr. Rope in preparing his declaration, Google objected and responded that there were none. *Id.*

Due to VoIP's persuasive arguments, the Court is willing to grant some form of relief to VoIP. VoIP only vaguely asks that "Google should not be rewarded for being less than forthcoming." ECF No. 83 at 11. It remains unclear what exactly VoIP wants the Court to do, but the Court will certainly not "reward" Google in any way. VoIP does not ask the Court to strike his declaration or for an adverse inference, so the Court will not *sua sponte* grant this relief. The Court

instead finds it appropriate to resolve all disputed facts against Mr. Rope's declaration when VoIP supplies any evidence at all that rebuts the challenged parts of his declaration. *Scramoge Tech. Ltd. v. Apple, Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *3–4 (W.D. Tex. May 25, 2022) (finding it appropriate to give no weight to contested parts of the declaration of repeatedly unreliable declarant Mark Rollins); *but see Motion Offense, LLC v. Google LLC*, No. 6:21-CV-00514-ADA, 2022 WL 3723303, at *2 (W.D. Tex. Aug. 29, 2022) (declining to find that Mr. Rope failed to conduct a reasonable investigation in a case where he conducted an independent investigation and spoke to more than twenty individuals).

Still, the Court finds that this factor weighs in favor of transfer. While the Rope declaration has little evidentiary value, even its little evidentiary value is more than the evidence that VoIP offers against transfer. VoIP presents no declaration, deposition testimony, or any other evidence to rebut Google's thin venue arguments. Mr. Rope's identification of ▉▉▉▉, ▉▉▉▉▉, ▉▉▉▉▉▉▉▉▉, and ▉▉▉▉ as relevant witnesses in the Northern District of California remains unchallenged. ECF No. 62-7 ¶¶ 7, 9.

The Court wholly adopts VoIP's summary of Mr. Rope's investigation: he "found eight geographically dispersed witnesses, only four of them in NDCAL." ECF No. 83 at 10. The Court further adopts VoIP's argument that Kevin Williams is VoIP's CFO who works in Waco and will find trial in Waco more convenient. *Id.* at 11. VoIP also identified overseas witnesses, but their convenience is neutral. *Id.*

Although the Court agrees that Mr. Rope prepared his declaration based on an insufficient investigation, the final score is four witnesses who will find trial in California more convenient against one who will find Waco more convenient. Thus, the Court finds this factor favors transfer.

### b. The relative ease of access to sources of proof favors transfer.

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). The question properly focuses on "*relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340.

Here, Google argues that its employees with relevant knowledge of the accused technologies are "primarily" based in the Northern District of California, and none are "known" in the Western District of Texas. ECF No. 62-7 ¶ 5. Google's technical documents about products and services are normally created and maintained by the employees working on those products and services. *Id.* ¶ 4. Google further argues that there is no indication that any evidence is present in this District and points out that VoIP itself maintains documents in the Northern District of California. ECF No. 85 at 2–3; ECF No. 86-1 at 4. Thus, Google argues, "the geographic locus of evidence" favors transfer. ECF No. 62 at 12.

In rebuttal, VoIP points out that Google has failed to explain how its electronic documents are more easily accessible in the Northern District of California when it has 1,755 employees working in the Western District of Texas. ECF No. 83 at 6. VoIP argues: "for Google, which has become one of the most successful corporations in the world specifically because it is able [to] process prodigious amounts of electronic data daily, to argue that it is inconvenient for it to provide documents in WDTX, is simply not credible." *Id.*

In its supplemental brief, VoIP claims that the location of relevant documents is actually in Chicago, as evidenced by Google's initial disclosures that the relevant documents are located there. *Supra* Section III(A); ECF No. 97-1 at 2–3. The paragraph in the disclosure states that "Defendant will . . . produce or make copies or make available for inspection . . . documents . . . Such documents are or will be located at the offices of Google's litigation counsel at Paul Hastings . . . Chicago." ECF No. 97-3 at 16. However, Google has convinced this Court that this statement was a mere clerical error that was swiftly corrected, and that the relevant documentation is available at the offices of its counsel in Palo Alto, as well as at Google's Mountain View offices where many of the relevant documents are created and maintained. ECF No. 98 at 1–2; ECF No. 97-3 at 16; ECF No. 97-4 at 16. Regardless, the Court gives no weight to a statement that Google will collect and produce documents in Chicago. "[W]here the documentation *will be collected* is not relevant and therefore has no bearing on this factor. This factor looks to where documentary evidence, such as documents and physical evidence, is stored presently, not where it will be collected in the future. Looking to the location of future document collection invites gamesmanship and venue manipulation." *Gentex Corp. v. Meta Platforms, Inc.*, No. 6:21-CV-00755-ADA, 2022 WL 2654986, at *4 (W.D. Tex. July 8, 2022) (internal citation and quotation marks omitted).

The Court finds this factor to weigh in favor of transfer. Google has shown that both Google and VoIP maintain evidence in the Northern District of California. ECF No. 86-1 at 4; ECF No. 62-7 ¶¶ 4–9. The accused technologies in this case were developed at Google's Mountain View headquarters, the "strategic center" of Google's business. ECF No. 62-7 ¶¶ 2, 5. This Court must not only consider the location of Google's documents, all of which are in the Northern District of California, but also the location of "document custodians" and "where documents are created and

maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Google identified two engineers responsible for Google Hangouts, ███████████ two ████████ e for Google Home, █████ ███ and ████████. ECF No. 62-7 ¶¶ 7, 9. Those four engineers are in the Northern District of California. *Id.* Because the employees responsible for development of the accused technologies are also the ones charged with maintaining relevant documents, the location of Google's custodians further shifts this factor in favor of transfer. VoIP is correct that Google has 1,755 employees here in the Western District of Texas, but until Google or VoIP shows that some of those 1,755 employees have permissions or credentials to access and retrieve the electronic documents relevant to this case, the Court cannot find that Google's employees here in the Western District of Texas can access the evidence just as easily. Thus, this factor weighs in favor of transfer.

    **c.   The compulsory process factor is neutral.**

The Federal Rules permit a court to subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). And "when there is no indication that the witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness' attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486,

at *3 n.1 (Fed. Cir. Sept. 25, 2018)). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

To support transfer, Google points to prior art witnesses Paquet and Walker of the DialPad and GrandCentral systems, and they are located in the Northern District of California whom Google intends to use to prove invalidity. ECF No. 62 at 6. Google additionally identifies prior art publication witnesses Chang, Harbison, and Lo, who are located in the Northern District of California. *Id.* Finally, Google additionally identifies Chu as the inventor of U.S. Pat. No. 8,036,366. *Id.* at 12. Chu is located in the Northern District of California. *Id.* Since these witnesses have provided no indication of their willingness to attend trial, Google argues that the Northern District of California's subpoena power will be necessary. *Id.*

For its part, VoIP points to witnesses George Brunt and Marcus Redding in Dallas and Austin whom VoIP asserts will require this Court's subpoena power to compel attendance. ECF No. 83 at 8. Mr. Brunt has relevant licensing information and Mr. Redding has information related to the damages for this case. *Id.* Like Google's witnesses, VoIP's Dallas and Austin witnesses have not indicated a willingness to attend trial. *Id.* VoIP further argues that Google failed to show that its "cherry picked" prior-art witnesses are relevant. *Id.* at 7.

The Court finds this factor is neutral. Google cites six witnesses in its desired forum that require the Northern District of California's compulsory process; VoIP points to two that require this Court's compulsory process but are very likely to be called at trial for damages testimony. The Court discounts the likelihood that Google will call its "cherry picked" prior art witnesses because Google served invalidity contentions that identify 50 publications and 12 systems. Parties rarely call prior art witnesses to trial, and even if Google did, Google is statistically unlikely to select the

two prior art references involving Paquet and Walker, the Chang, Harbison, or Lo prior art publications, or Chu's '366 patent from among its 76 total options. *See VoIP-Pal.com, Inc. v. Verizon Commc'ns, Inc.*, No. 6:21-CV-00672-ADA, 2022 WL 1785625, at *4 (W.D. Tex. June 1, 2022) ("the dozen or so prior art witnesses in the NDCA outweigh the two witnesses here in the WDTX."). At the same time, the Court does not categorically disregard these prior art witnesses. *In re Hulu, LLC*, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). Because the Court presumes witnesses are unwilling unless they indicate otherwise, the Court deems both parties' witnesses to be unwilling.

Six unwilling witnesses reside in the Northern District of California as the Western District of Texas, but the witnesses in the Northern District of California are less likely to testify at trial than the two witnesses in Texas who are far more likely to testify. Overall, the Court finds this factor is neutral.

### d. Other practical problems are neutral.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

The Court finds this factor neutral. VoIP filed six cases in this District on June 25, 2021, each accusing similar technologies. ECF No. 63 at 1. Three of those cases have since been dismissed. *VoIP-Pal.com, Inc. v. Apple Inc.*, No. 6:20-cv-275, ECF No. 49 (W.D. Tex. Mar. 24, 2021); *VoIP-Pal.com, Inc. v. AT&T, Inc.*, No. 6:20-cv-325, ECF No. 53 (W.D. Tex. Mar. 25, 2021); *VoIP-Pal.com, Inc. v. Verizon Comms., Inc.*, No. 6:20-cv-327, ECF No. 49 (W.D. Tex. Apr. 1, 2021). But the Northern District of California also has experience with these patents: that Court presided over five related VoIP cases between 2018 and 2019. ECF No. 62 at 2–4. VoIP argues that Judge Koh's familiarity with the facts left the Northern District of California when Judge Koh left the bench there. ECF No. 83 at 12. However, other than Judge Koh, Magistrate Judge DeMarchi has handled multiple related cases in the Northern District of California. ECF No. 85 at 4. Thus, both the transferor and transferee forums are familiar with the parties and technologies at issue. And while the co-pending litigation in this Court would normally weigh against transfer, each of those cases are also subject to pending motions to transfer. Accordingly, the Court finds this factor neutral.

### D. The public interest factors are neutral.

#### a. Court congestion weighs against transfer.

The analysis under this factor asks "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved . . . ." *Genentech, Inc.*, 566 F.3d at 1347. However, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are

neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

The Court finds this factor to weigh against transfer. Google argues that the median time to trial is 24.9 months for the Northern District of California versus 20.9 months for this Court. ECF No. 62 at 14; ECF Nos. 63-30 to 63-31. Thus, despite having a larger caseload, this Court is admittedly faster. As this Court recently noted, "the public has an interest in the rapid resolution of patent disputes (without reference to whether the patent is being worked)." *BillJCo LLC v. Apple, Inc.*, No. 6:21-cv-00528, 2022 WL 607890 at *8 n.2 (W.D. Tex. Mar 1, 2022). The Court thus weighs the court congestion factor as a single factor against transfer that does not outweigh multiple other factors.

### b. The local interests favor transfer.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). Accordingly, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original).

But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *Id.* Moreover, "little or no

weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

The Court finds this factor to weigh in favor of transfer. To be sure, Google has a strong presence within the Western District of Texas—VoIP correctly points out that Google employs over 1,700 people here, leases over 900,000 square feet of office space here, and intends to add 5,000 more employees here in the near future. ECF No. 83 at 13. But this is not the type of presence courts weigh in analyzing the local interests factor. *Apple*, 979 F.3d at 1344. Rather, the Court looks to the events that give rise to this lawsuit. *Juniper Networks*, 14 F.4th at 1320. Accordingly, the Court properly looks to the location where Google's accused technology was developed: the Northern District of California. ECF No. 62-7 ¶¶ 5, 7, 9. As the Federal Circuit has made clear, the "research[], design[], and develop[ment]" of accused technology within the Northern District of California are "significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021), *cert. denied sub nom. Ikorongo Tex. LLC v. Samsung Elecs. Co., Ltd.*, 142 S. Ct. 1445 (2022).

And while the location of VoIP's headquarters in Waco would normally be entitled to at least some weight, the Court gives no weight to the plaintiff's location when there is evidence that the presence within the forum is "recent and ephemeral." *Juniper Networks*, 14 F.4th at 1320; *cf. BillJCo*, 2022 WL 607890 at *9. VoIP established itself in Waco through ▮▮▮▮▮▮▮▮ of a virtual office around one month before it filed this lawsuit, and its "headquarters" here are

███████████████████████. ECF Nos. 85-1 at 1 ¶ 3; 85-2. Such a connection to Waco is insufficient to weigh against transfer.

In conclusion, the local interest factor favoring transfer cancels out the court congestion factor that weighs against transfer. Thus, the public interest factors are neutral overall.

### c.  The remaining public interest factors are neutral.

The Court finds the "familiarity with governing law" and "avoidance of conflict of laws" factors neutral. Both districts are familiar with the uniform body of federal patent law overseen by the Federal Circuit, and there are no issues with conflict of laws or any foreign law. Thus, both factors are neutral.

## IV.   CONCLUSION

VoIP's motion for leave (ECF No. 97) is **GRANTED**, and the Court has already considered VoIP's supplemental materials.

In sum, the balance of public and private *Volkswagen* factors clearly favors transfer. The sources of proof and convenience of willing witnesses favor transfer. No private interest factor weighs against transfer. The public interest factors are neutral overall. Thus, Google's Motion to Transfer to the Northern District of California is **GRANTED**.

SIGNED this 21st day of September, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE